J. A24038/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| LUCAS J. HARTMAN, | : | No. 337 MDA 2018 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered February 12, 2018,
in the Court of Common Pleas of Mifflin County
Criminal Division at No. CP-44-CR-0000280-2017

BEFORE: OTT, J., McLAUGHLIN, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:         **FILED MARCH 22, 2019**

Lucas J. Hartman appeals from the February 12, 2018 aggregate judgment of sentence of 72 hours' to 6 months' imprisonment imposed after he was found guilty in a bench trial of driving under the influence of alcohol or a controlled substance ("DUI") and DUI – highest rate of alcohol.[1]  After careful review, we affirm the judgment of sentence.

The record reflects that the parties stipulated to the facts set forth in the March 17, 2017 criminal complaint and affidavit of probable cause.  (Notes of testimony, 1/10/18 at 1; **see also** certified record at No. 5.)  In sum, on January 1, 2017, at approximately 1:28 a.m., Lewistown Police Officer David Vallimont was dispatched to a parking lot in the area of South Pine and

---

[1] 75 Pa.C.S.A. §§ 3802(a)(1) and 3802(c), respectively.

Logan Streets in Lewistown, Pennsylvania, to assist with an unconscious driver. Upon arriving at the scene, Officer Vallimont observed that appellant was conscious but exhibited multiple signs of intoxication, including slurred speech, glassy and blood shot eyes, and the odor of alcohol. After failing three field-sobriety tests, appellant was placed under arrest for suspicion of DUI and transported to Lewistown Hospital for a blood draw. At the hospital, Officer Vallimont read appellant a DL-26B form[2] and appellant consented to a blood test. The results of the blood test revealed that appellant's blood alcohol content was .199.

On March 17, 2017, appellant was charged with one count each of DUI and DUI – highest rate of alcohol. On June 6, 2017, appellant was accepted into the Accelerated Rehabilitative Disposition ("ARD") program, but his acceptance was subsequently revoked after he admitted to violating the conditions of ARD. Thereafter, on January 2, 2018, appellant filed an **omnibus** pre-trial motion to suppress the results of his blood test. (**See** "Omnibus Pre-Trial Motion," 1/2/18 at ¶¶ 8-11.) Following an evidentiary hearing, the trial court denied appellant's suppression motion on January 10, 2018. Appellant waived his right to a jury trial and proceeded to a bench trial

---

[2] The DL-26B form, "Chemical Testing Warnings and Report of Refusal to Submit to a Blood Test as Authorized Section 1547 . . . [,]" is commonly referred to as an implied consent form and notifies the arrestee of the penalties to which they could be subjected if they refuse to consent to a blood draw following a DUI arrest. **See PennDOT v. Weaver**, 912 A.2d 259, 261 (Pa. 2006).

that same day. On January 11, 2018, the trial court found appellant guilty of the aforementioned offenses and sentenced him to an aggregate term of 72 hours' to 6 months' imprisonment on February 12, 2018. This timely appeal followed on February 15, 2018.

On February 16, 2018, the trial court ordered appellant to file a concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b), within 21 days. Appellant filed his timely Rule 1925(b) statement on March 9, 2018, and the trial court filed its Rule 1925(a) opinion on March 13, 2018.

In his sole issue on appeal, appellant contends that the trial court erred in denying his motion to suppress the results of his blood test because his consent was invalid and involuntary. (Appellant's brief at 4.)

> [Our] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous.

*Commonwealth v. Jones*, 121 A.3d 524, 526 (Pa.Super. 2015) (citation omitted; brackets in original), *appeal denied*, 135 A.3d 584 (Pa. 2016).

"Both the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution guarantee individuals freedom from unreasonable searches and seizures." *Commonwealth v. Bostick*, 958 A.2d 543, 550 (Pa.Super. 2008) (citation and internal quotation marks omitted), *appeal denied*, 987 A.2d 158 (Pa. 2009). The "administration of a blood test . . . performed by an agent of, or at the direction of the government" constitutes a search under both the United States and Pennsylvania Constitutions. *Commonwealth v. Evans*, 153 A.3d 323, 327 (Pa.Super. 2016) (citation omitted). "A search conducted without a warrant is deemed to be unreasonable and therefore constitutionally impermissible, unless an established exception applies." *Commonwealth v. Strickler*, 757 A.2d 884, 888 (Pa. 2000). "One such exception is consent, voluntarily given." *Id.* at 888-889 (citation omitted).

> While there is no hard and fast list of factors evincing voluntariness, some considerations include: 1) the defendant's custodial status; 2) the use of duress or coercive tactics by law enforcement personnel; 3) the defendant's knowledge of his right to refuse to consent; 4) the defendant's education and intelligence; 5) the defendant's belief that no incriminating evidence will be found; and 6) the extent and level of the defendant's cooperation with the law enforcement personnel.

*Commonwealth v. Gillespie*, 821 A.2d 1221, 1225 (Pa. 2003) (citation omitted), *cert. denied*, 540 U.S. 972 (2003).

On June 23, 2016, the United States Supreme Court decided *Birchfield v. North Dakota*, 136 S.Ct. 2160 (2016), wherein it addressed the

constitutionality of warrantless searches of breath and blood under the Fourth Amendment, specifically with regard to the search-incident-to-arrest and consent exceptions to the warrant requirement. *Id.* at 2184. The ***Birchfield*** Court held, ***inter alia***, that the Fourth Amendment to the United States Constitution does not permit warrantless blood tests incident to arrests for drunk driving and that a state may not criminalize a motorist's refusal to comply with a demand to submit to blood testing. *Id.* at 2185-2186 (holding, "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense.").

Shortly thereafter, PennDOT revised the DL-26 form to remove the warnings mandated by Section 3804 of the Motor Vehicle Code that individuals suspected of DUI would face enhanced criminal penalties if they refused to submit to a blood test. Subsequently, in ***Evans***, a panel of this court invalidated Section 3804(c), holding that Pennsylvania's implied-consent law unconstitutionally "impose[s] criminal penalties on the refusal to submit to" a blood test. ***Evans***, 153 A.3d at 331. Thus, where a defendant consented to a blood test after receiving Pennsylvania's pre-***Birchfield*** implied consent warnings, the blood test was unconstitutional because consent was elicited following warnings relating to the now-invalidated enhanced, mandatory penalty for failing to consent. *Id.*

Instantly, appellant contends that his consent to the warrantless blood draw was not voluntary, knowing, or conscious because the DL-26B form

Officer Vallimont read to him made no reference to the enhanced criminal penalties that were still part of the statutory scheme of Section 3804(c) at the time of his arrest. (Appellant's brief at 8-9.) In support of this contention, appellant avers that,

> an officer is required to advise an arrestee of the statutory penalties for refusing to submit to a blood test including potential enhanced criminal penalties. Where this is not done, the arrestee is not in a position to make a "knowing and conscious" decision and, thus, [appellant's] consent was not voluntary.

*Id.* We disagree.

It is well settled that in DUI cases, a police officer requesting that a motorist submit to a warrantless blood draw "ha[s] no obligation to enlighten [the motorist] as to the full details of federal constitutional law; **[the police officer] only need[] tell [the motorist] the current, legal consequences** of refusing to consent to the blood-draw." ***Commonwealth v. Venable***, ___ A.3d ___, 2018 WL 6320831, *5 (Pa.Super. 2018) (citation omitted; bracketed information amended; emphasis added); ***see also Commonwealth v. Myers***, 164 A.3d 1162, 1171 (Pa. 2017). Here, the record reflects that following appellant's arrest for suspicion of DUI, Officer Vallimont read appellant the DL-26B form concerning the chemical test of his blood. The DL-26B form included the following language:

> It is my duty as a police officer to inform you of the following:

> You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.
>
> I'm requesting that you submit to a chemical test of blood.
>
> If you refuse to submit to the blood test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence you will be suspended for up to 18 months.
>
> You have no right to speak to an attorney or anyone else before you decide whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings, or if you remain silent when asked to submit to a blood test, you will have refused the test.

DL-26B form, 1/1/7 (numeration omitted); Commonwealth's Exhibit 1.

The DL-26B form utilized by Officer Vallimont in this matter correctly reflected the current law in accordance with **Birchfield** and its Pennsylvania progeny. Namely, the DL-26B properly informed appellant only of the civil penalties to which he would be subject; namely, the suspension of his license, if he refused the blood draw. Appellant was not informed of any enhanced criminal penalties for refusal to consent to a blood test because **Birchfield** declared such enhancement unconstitutional. **See**, **e.g.**, **Commonwealth v. Smith**, 177 A.3d 915, 921 (Pa.Super. 2017) (reiterating that **Birchfield** "prohibited states from imposing criminal penalties upon an individual's refusal to submit to a warrantless blood test."). Nor was Officer Vallimont required to do so under **Venable** and **Myers**. Additionally, there is not a

scintilla of evidence to suggest that Officer Vallimont's recitation of the DL-26B form was misrepresentative, misleading, or in any way coercive, and appellant did not object to the form or ask any questions about the form. Appellant voluntarily signed the DL-26B form and consented to the blood draw. (*See* DL-26 form, 1/1/17; Commonwealth's Exhibit 1.)

Based on the foregoing, we discern no error on the part of the trial court in concluding that appellant's consent to the warrantless blood draw was voluntary. The record supports the trial court's factual findings and its legal conclusions drawn from those facts are correct. Accordingly, the trial court properly denied appellant's *omnibus* motion to suppress to the results his blood test. Therefore, we affirm appellant's February 12, 2018 judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/22/2019